# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHERINE FINGER,<br><br>Plaintiff,<br><br>v.<br><br>DASEKE, INC., CHUCK SERIANNI, JONATHAN SHEPKO, BRIAN BONNER, ENA WILLIAMS, GRANT GARBERS, CATHARINE ELLINGSEN, MELENDY LOVETT, and BRUCE BLAISE,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Katherine Finger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder action brought by Plaintiff against Daseke, Inc. ("Daseke" or the "Company") and the members of Daseke's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Daseke to TFI International Inc. ("TFI International") (the "Proposed Transaction").

2. On December 22, 2023, Daseke entered into an Agreement and Plan of Merger with TFI International and TFI International's wholly-owned subsidiary, Diocletian MergerCo, Inc. ("Acquisition Sub") (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, TFI International will acquire Daseke for $8.30 in cash per share of Daseke common stock outstanding.

3. On February 15, 2024, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Daseke stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections, including the most critical metric for Daseke stockholders – Daseke's unlevered free cash flow projections – relied upon by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in connection with its fairness opinion; (ii) the financial analyses that support the fairness opinion provided by J.P. Morgan; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by J.P. Morgan and Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Daseke stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Daseke stockholders to vote on the Proposed Transaction is currently scheduled for March 26, 2024. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Daseke's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Daseke's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of shares of Daseke common stock.

10. Defendant Daseke is a Delaware corporation, with its principal executive offices located at 15455 Dallas Parkway, Suite 550, Addison, Texas 75001. Daseke's shares trade on the Nasdaq Capital Market under the ticker symbol "DSKE."

11. Defendant Chuck Serianni has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Jonathan Shepko has been Chief Executive Officer and a director of the Company at all relevant times.

13. Defendant Brian Bonner has been a director of the Company at all relevant times.

14. Defendant Ena Williams has been a director of the Company at all relevant times.

15. Defendant Grant Garbers has been a director of the Company at all relevant times.

16. Defendant Catharine Ellingsen has been a director of the Company at all relevant times.

17. Defendant Melendy Lovett has been a director of the Company at all relevant times.

18. Defendant Bruce Blaise has been a director of the Company at all relevant times.

19. Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Daseke provides transportation and logistics solutions in the United States, Canada, and Mexico. The Company operates through two segments: Flatbed Solutions and Specialized Solutions. Through its Flatbed Solutions segment, the Company focuses on delivering transportation and logistics solutions that principally require the use of flatbed and retractable-sided transportation equipment. Through its Specialized Solutions segment, Daseke focuses on delivering transportation and logistics solutions that require the use of specialized trailering transportation equipment. As of September 30, 2023, the Company operated 3,051 company-owned tractors, 1,894 independent-owned contractors' tractors, and 11,045 trailers.

**The Proposed Transaction**

21. On December 22, 2023, Daseke announced that it had entered into the Proposed Transaction, stating, in relevant part:

> **Addison, Texas, Dec. 22, 2023 (GLOBE NEWSWIRE) --** Daseke, Inc. (NASDAQ: DSKE) (Daseke or the Company), the premier North American

4

transportation solutions specialist dedicated to servicing challenging industrial end markets, today announced that, with the unanimous approval of Daseke's board of directors, it has entered into a definitive agreement to be acquired by TFI International Inc. (NYSE and TSX: TFII) (TFI International), a North American leader in the transportation and logistics industry, in an all-cash transaction that values Daseke at an enterprise value of approximately $1.1 billion.

Subject to the terms of the agreement, Daseke common stockholders will receive $8.30 per share in cash, representing a premium of 69% to the last reported sale price on December 21, 2023 and a premium of 82% to the volume-weighted average price (VWAP) of the common stock for the 30 trading days ending on December 21, 2023.

Jonathan Shepko, Chief Executive Officer of Daseke commented, "We believe this transaction to be a tremendous outcome for our Daseke shareholders, providing a near-term liquidity event at a significant premium, and is consistent with our stated priority of progressing opportunities that maximize value for our shareholders. TFI has a proven track record of successfully executing acquisitions that deliver value for its customers, shareholders, partners, and team members. We are very fortunate to be joining a like-minded organization who shares our commitment to strong customer relationships, services excellence, and utmost respect for our professional drivers, each of which has fueled Daseke's success over the last 15 years."

The transaction is expected to close during the second quarter of 2024, subject to Daseke common stockholder approval, regulatory approvals and other customary closing conditions. Closing is not subject to any financing condition. Upon closing of the transaction, Daseke's common stock will no longer be listed on any stock exchange, and Daseke will operate its portfolio of brands as part of TFI International's Truckload segment.

J.P. Morgan Securities LLC is serving as exclusive financial advisor to Daseke, and Kirkland & Ellis LLP is serving as Daseke's legal advisor.

**The Materially Incomplete and Misleading Proxy Statement**

22.     On February 15, 2024, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Daseke stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan; (iii) the background

5

of the Proposed Transaction; and (iv) potential conflicts of interest faced by J.P. Morgan and Company insiders.

*Material Misrepresentations and/or Omissions Concerning Daseke's Financial Projections*

23. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

24. Critically, the Proxy Statement fails to disclose the unlevered free cash flows that Daseke was forecasted to generate from calendar year 2024 through 2028, relied upon by the Board's financial advisor J.P. Morgan in connection with its *Discounted Cash Flow Analysis*. A discounted cash flow analysis is considered the premier and most reliable valuation tool that a banker can employ in a merger context, because management's own internal projections (typically cash flows or unlevered free cash flows) are the core component of the analysis.[1] The unlevered free cash flows formed the basis of the *Discounted Cash Flow Analysis* of Daseke that J.P. Morgan performed in connection with its fairness opinion. *See* Proxy Statement at 49 ("J.P. Morgan conducted a discounted cash flow analysis of Daseke using the unlevered free cash flows that Daseke was forecasted to generate from calendar year 2024 through 2028 based on the Daseke Projections.").

25. The Proxy Statement includes a summary of certain of Daseke management's financial projections for calendar years 2019 through 2028. *See id.* at 52-53. Yet, this summary fails to include the most important projections – the Company's unlevered free cash flows and the

---

[1] *See, e.g., Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Delaware Chancery Court has employed the discounted cash flow analysis method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama By-Products Corp.,* C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the discounted cash flow analysis method to be the preeminent method of valuation).

underlying line items. The omission of the unlevered free cash flows and underlying line items renders the projections on pages 52-53 and the summary of J.P. Morgan's *Discounted Cash Flow Analysis* of Daseke set forth on page 49 of the Proxy Statement incomplete and misleading, because the Proxy Statement provides a materially incomplete and misleading valuation picture of the Company.

26. In addition, with respect to the Company's WholeCo Projections and RemainCo Projections, the Proxy Statement fails to disclose all line items underlying the Company's Adjusted EBITDA.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's Financial Analyses*

27. The Proxy Statement fails to disclose material information concerning J.P. Morgan's financial analyses.

28. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, in addition to the unlevered free cash flows used in the analysis, the Proxy Statement fails to disclose a quantification of: (i) the terminal year unlevered free cash flow; (ii) the Company's terminal values; (iii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 10.0%; (iv) Daseke's net debt as of December 13, 2023; and (v) Daseke's fully diluted outstanding shares.

29. With respect to J.P. Morgan's *Public Trading Multiples Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies analyzed by J.P. Morgan; and (ii) Daseke's projected EPS for the year ending December 31, 2024.

30. With respect to J.P. Morgan's *Selected Transactions Multiple Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by J.P. Morgan.

31. With respect to J.P. Morgan's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

32. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

33. According to the Proxy Statement, Daseke entered into numerous confidentiality agreements during the process leading up to the Proposed Transaction that contained standstill provisions. Specifically, Daseke entered into a confidentiality agreement (i) with a party identified in the Proxy Statement as "Party D" on July 26, 2023; (ii) with 60 prospective bidders contacted by J.P. Morgan between August 16, 2023, and late September 2023; and (iii) with TFI International on December 1, 2023. *See id.* at 34, 37. The Proxy Statement fails, however, to disclose the details of the standstill agreements contained in these confidentiality agreements, including whether any of the standstill agreements are "don't ask, don't waive" standstill provisions currently precluding any party from submitting a topping bid for the Company.

34. In addition, the Proxy Statement fails to disclose information concerning the negotiations of employee benefits in connection with the Proposed Transaction. Notably, on December 18, 2023, TFI International accepted the Board's counter-proposal to a merger consideration of $8.45 per share of Daseke common stock. *See id.* at 39. The next day, TFI International's counsel submitted proposed changes to a draft merger agreement, revising the treatment of Daseke executives compensation and benefit opportunities. *Id.* At a December 19, 2023 Board meeting, "[Daseke m]anagement came to the conclusion that there was a gap between TFI [International]'s and the Company's expectations regarding the Company's existing and anticipated treatment of executive compensation matters in connection with the closing of the

proposed transaction." *Id.* Yet, the Proxy Statement fails to quantify the gap between TFI International's expectations and the Company's expectations. Critically, on December 21, 2023, the parties resolved the open compensation matters by, among other things, agreeing to a reduced merger consideration of $8.30 per share. *Id.* at 41.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's and Company Insiders' Potential Conflicts of Interest*

35. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by J.P. Morgan.

36. According to the Proxy Statement, "J.P. Morgan's commercial banking affiliate is an agent bank and a lender under outstanding credit facilities of Daseke, for which it receives customary compensation or other financial benefits." *Id.* at 50. Yet, the Proxy Statement fails to disclose a quantification of the compensation and other financial benefits received by J.P. Morgan's commercial banking affiliate for these services provided to Daseke.

37. The Proxy Statement also fails to disclose material information concerning Company insiders' potential conflicts of interest.

38. Specifically, the Proxy Statement fails to disclose whether any of TFI International's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

39. In sum, the omission of the above-referenced information renders statements in the "Certain Financial Projections," "Opinion of J.P. Morgan Securities LLC," "Background of the Merger" and "Interests of the Company's Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote,

Plaintiff and the other stockholders of Daseke will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Daseke**

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Daseke is liable as the issuer of these statements.

42. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

43. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

44. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

45. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

46. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Daseke within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Daseke and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

52. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Daseke, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 11, 2024                                               **ACOCELLI LAW, PLLC**

By  */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*